IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEONARDO HARDWICK, : CIVIL ACTION NO. 1:CV-12-1936
:
Plaintiff : (Chief Judge Kane)
:
v. : (Magistrate Judge Blewitt)
:
R. PACKER, *et al.*, :
:
Defendants :

**REPORT AND RECOMMENDATION**

I. **BACKGROUND.**

On September, 27, 2012, Plaintiff Leonardo Hardwick, formerly inmate at the United States Penitentiary Lewisburg, in Lewisburg, Pennsylvania ("USP-Lewisburg"), filed, *pro se*, his Complaint in this *Bivens* civil rights action pursuant to 28 U.S.C. § 1331.[1] (Doc. 1). Plaintiff is currently confined at USP-Florence, Florence, Colorado. Named as Defendants are Correctional Officer R. Packer and Warden J.E. Thomas. Plaintiff also filed a Motion for Leave to Proceed *In Forma Pauperis*. (Doc. 2). On October 2, 2012, we issued an Order granting Plaintiff's Motion for Leave to Proceed *in forma pauperis* and directing service of Plaintiff 's Complaint on the tow Defendants. (Doc. 7). Both Defendants were then served.

On December 6, 2012, Plaintiff filed a Request for Entry of Default, but in response, the Defendants filed a Motion for Extension of Time to respond to Plaintiff's Complaint, which we

_____

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971). Plaintiff's action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added)).

granted on December 12, 2012. We gave Defendants an extension until February, 11, 2013. (Docs. 11-13). We also denied Plaintiff's Request for Default. (Doc. 14).

Subsequently, on February, 11, 2013, Defendants timely filed a Motion to Dismiss or for Summary Judgment. **(Doc. 15)**. Defendants filed their support Brief on March 5, 2013. (Doc. 23). Defendants also filed their original Statement of Material Facts ("SMF") on March 5, 2013 (Doc. 22), but later had it deleted from the docket since it contained an Exhibit that should not have been released to the public and that Plaintiff could not possess. After we granted Defendants' Motion to Seal Attachment 5 to the Declaration of Michael Romano and submit it in camera, Defendants re-filed their Statement of Material Facts with Exhibits (Doc. 29) on April 4, 2013. On May 3, 2013, Plaintiff notified the court that he had been transferred to USP-Florence, in Florence, Colorado, and he requested an extension of time to respond to Defendants' Doc. 15 Motion. (Doc. 31). We granted Plaintiff 's request for an extension of time and directed Defendants to re-serve Plaintiff with their Doc. 15 Motion, brief and SMF at USP-Florence. (Doc. 32). On June, 7, 2013, Plaintiff filed his Brief in Opposition, Exhibits, including Plaintiff 's Declaration, along with his so-called "Amended Statement of Material Facts." (Docs. 34-36). Despite being sent a copy of the pertinent Local rules of this Court (Doc. 5), Plaintiff failed to file a proper paragraph-by-paragraph response to Defendants' SMF as required by Local Rule 56.1, M.D. Pa. On June 19, 2013, Defendants filed a Reply Brief. (Doc. 37).

On July 2, 2013, Plaintiff filed a 1-sentence Motion for an Extension of Time seeking 14 days to file a sur-reply brief to Defendants' Reply Brief. **(Doc. 39)**. Plaintiff cannot simply file a sur-reply brief. Rather, he must file a motion seeking leave of court to do so explaining why he should be

permitted to file a sur-reply brief. Plaintiff has not filed the required motion seeking leave of ocurt. Nor has he explained why he needs to file a sur-reply brief. Regardless, as fully discussed below, we find that record in this case is complete and that no further briefs from Plaintiff are needed for the Court to rule on Defendants' dispositive motion. As such, we will recommend that the Court deny Plaintiff 's Doc. 39 Motion for an Extension of Time.

Thus, Defendants' **Doc. 15** Motion is now ripe for review.

## II.     ALLEGATIONS OF COMPLAINT.

In his 5-page Complaint, Plaintiff raises a claim of excessive use of force in violation of his Eighth Amendment rights against cruel and unusual punishment. Plaintiff also filed a 4-paragraph Affidavit in support of his Complaint. (Doc. 1-1). Plaintiff alleges that on April, 9, 2012, during his confinement at USP-Lewisburg, Defendant CO Packer, along with several other unnamed correctional officers, lured him from his cell and into an unmonitored shower area, where Defendant Packer pushed him into a shower cage causing his eye to hit the cage and causing him to lose consciousness. Plaintiff then avers that Defendant Packer and the other correctional officers proceeded to "stomp and kick" him in his face and head, while he was restrained in handcuffs behind his back, which caused him to regain consciousness. Plaintiff also states that he urinated on himself from the impact of the blows. Plaintiff further alleges that Defendant Packer and the other correctional officers continued to assault him and that he suffered injuries. (Doc. 1, pp. 2-3).

Plaintiff alleges that after the assault incident, he was placed in G-Block where Defendant Packer worked and that  he when he began to file a grievance and exhaust his administrative remedies regarding the   April, 9, 2012 incident, Defendant Packer began to retaliate by

3

"threatening me everyday, and doing things to my food." (Id. at p. 4). Further, Plaintiff claims he complained to Defendant Warden Thomas, but that the Warden would not take action and refused to remove Defendant Packer form G-Block. Plaintiff then avers that Defendant Warden Thomas "therefore [became] a part of the conspiracy, because he was aware that Correctional Officer R. Packer had assaulted me, but he did nothing to ensure my safety." (Id.).

We find that Plaintiff has raised an Eighth Amendment excessive force claim and a First Amendment retaliation claim against Defendant Packer and, a conspiracy claim against Defendant Thomas.

As relief, Plaintiff makes the following requests: "I would like for Correctional Officer charged with conspiracy [against rights under 18 U.S.C. §241] against my 8th Amendment Constitutional right to be free from cruel and unusual punishment;" "I would like to be awarded 1.5 million dollars from each Defendant in his capacity (sic);" "I would also like to be awarded 1 million dollars in compensatory damaged (sic) from each individuals unlawful acts, and also awarded $100,000 in exemplary and punitive damages, 1 million dollars in emotional and mental injury, as well as pain and suffering." (Id. at p. 5).[2]

Plaintiff did not indicate conclusively on the face of his Complaint whether he fully exhausted the available BOP administrative remedies regarding his constitutional claims.

---

[2]Plaintiff's requests for specific amounts of monetary damages (Doc. 1, p. 5) should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

**III.    STANDARDS OF REVIEW.**

**A.    *MOTION TO DISMISS***

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of*

> *Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

### B.  MOTION FOR SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion  for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph,* 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law.  *Anderson,*  477 U.S. at 248.  "Facts that could alter the outcome are material facts." *Charlton v. Aramus Bd. of Educ.,* 25 F. 3d 194, 197 (3d Cir.), *cert. denied,* 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90. "Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

### C. BIVENS STANDARD

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200, n. 16 (M.D. Pa. 1992); *Mitchell v. Dodrill*, 696 F.Supp. 2d 454, 457, n. 1 (M.D. Pa. 2010)(citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). To state a claim under *Bivens*, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law. *See Young v. Keohane*, 809 F.Supp. at 1199; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal

involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Fisher v. Matthews,* 792F.Supp.2d 745 (M.D. Pa. 2011)(citing *Rode, supra*).

Additionally, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009).

## IV.    STATEMENT OF MATERIAL FACTS.

As mentioned, Defendants properly submitted their SMF (Doc. 29), and Exhibits, with respect to their Summary Judgment Motion in which they contend that undisputed evidence shows that they did not violate Plaintiff's Eighth Amendment rights. As indicated, we allowed Defendants to submit one of their Exhibits under Seal for in camera review. (Doc. 25-3). Defendants cited to evidence in the record to support each one of their SMF, ¶'s 1-49. (*See* Doc. 29 ). In response, Plaintiff filed a Brief in Opposition (Doc. 34), Amended Exhibits (Doc. 35), and a so-called "Amended Statement of Material Facts." (Doc. 36). In his Doc. 36 filing, consisting of 4 paragraphs, Plaintiff repeats the allegations of his Complaint, he states that he was medically treated after the alleged assault incident, he states that he had a disciplinary hearing on June 4, 2012, as

a result of the incident and told the DHO he was not guilty, and that he exhausted his BOP administrative remedies. Also, in his 6-paragraph Declaration, Plaintiff disputes some of the Defendants' SMF, namely, ¶'s 7-10, and ¶ 15. (Doc. 35). Plaintiff denies some of Defendants' SMF and attempts to clarify others, however, Plaintiff failed for the most part, to cite to evidence in the record to support his denials. (*See* Doc. 35, ¶'s 1-6). Specifically, Plaintiff avers that on April 9, 2012, he was being escorted by Defendant Packer from E-Block to G-Block and, that he did not threaten Packer and did not spit in Packer's face or attempt to pull away from Packer. Plaintiff avers that he was then assaulted and beaten by Defendant Packer and the other correctional officers "for nothing." (Doc. 35, ¶ 3). Plaintiff was charged with misconduct as a result of the April 9, 2012 incident for spitting in Defendant Packer's face. Plaintiff avers that he did not admit to the DHO on June 4, 2012, as his disciplinary hearing, that he spit in Packer's face, that he threatened Packer and that he attempted to pull away from Packer. Plaintiff concluded his Declaration by averring that "I deny everything Officer Packer said I did to him." (Id., ¶'s 4-5).

Thus, as mentioned, Plaintiff failed to file a proper paragraph-by-paragraph response to Defendants' SMF as he was required to do under Local Rule 56.1. Plaintiff did submit evidence (Doc. 35) to support his Declaration and Brief in Opposition, however did not cite to it sufficiently in supporting his claims and denials. Regardless, paragraphs 1-6 (allegations of Plaintiff's Complaint), 11-14, and 16-25 of Defendants' SMF are supported by the record submitted by Defendants. (Doc 29-1, Exs. A-B, Atts. 1-8). Thus, we find that paragraphs 1-6, 11-14, and 16-25

of Defendants' SMF are undisputed.[3]   *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michtavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed).  In light of Plaintiff's failure to properly respond to Defendants' Statement of Facts, we accept the uncontested portions of Defendants' Statement of Facts since they are all supported by their undisputed evidence.  Also, since Defendants have properly cited to their evidence to support their SMF, we do not fully repeat the cites to Defendants' evidence herein.

---

[3]Also, Defendants' stated paragraphs are all supported by their evidence and accepted as undisputed.

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried."
> *Id*. Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id*.

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa. 2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

In their SMF, Defendants begin by disputing the factual claims alleged in Plaintiff's Complaint. Defendants assert that on April 9, 2012, Officer Packer was escorting Plaintiff to the showers in G-Block when the Plaintiff threatened him more than once, attempted to pull away, and spat in his face. (Doc. 29, ¶'s 7-8). In response, Defendants state that Defendant Packer used force to maintain control over Plaintiff until other staff arrived, at which point they escorted Plaintiff to the medical department for an assessment. (Id. at ¶'s 9-12). The medical records (submitted by both Defendants and Plaintiff) show that Plaintiff suffered a one inch laceration to his right eyebrow that was actively bleeding. (Id. at ¶ 13). Defendant Packer then issued an incident report against Plaintiff charging him with prohibited acts of threatening another with bodily harm and assaulting any person, BOP Codes 203 and 224. After the incident, the DHO conducted a disciplinary hearing on June 4, 2012, in which Defendant Packer's version of the April 9, 2012 incident was corroborated by much evidence, including Plaintiff's own admission of guilt. The DHO found Plaintiff guilty of the charged BOP Code offenses. Thereafter, Plaintiff received a disciplinary punishment, including loss of 54 days of good conduct time. (Id. at ¶'s 14-16).

Furthermore, Defendants' SMF, and evidence cited to therein, shows that an "After Action Review Team" of various prison officials reviewed Defendant Packer's use of force on Plaintiff and concluded that it was "reasonable and appropriate". (Id. at ¶'s 21-23). The Office of Internal Affairs ("OIA") also conducted an Investigative Report regarding Plaintiff's initial grievance filed against Defendant Packer, in which it concluded there was "insufficient evidence to substantiate inmate Hardwick's allegations." (Id. at ¶'s 24-25). As indicated above, the OIA Report was filed under Seal in this case. (Doc. 25-3). We have reviewed, in camera, the OIA Report.

The OIA Report (Doc. 25-3, p. 3) concluded as follows:

> The investigation revelaed insufficnet evidence to substatnatie inmate Hardwick's allegations. Both staff involved in the incidnet confirm inmate Hardwick assaulted Officer Packer by spitting on him which relsuted in inmate Hardwick being palced on the floor to regain control of him. Additionally, inmate Hardwick refused to make any further statement becuase he did not want to incriminate himself. Thus, the charge of Excessive Use of Force is not sustained against Officer Packer.

(Doc. 29, ¶ 25).

Defendants' SMF also states that the BOP has a three-tiered system in which a prisoner may file grievances regarding his confinement, and that the remedy process is not generally considered to have been exhausted "until an inmate's final appeal is denied by the General Counsel." (Id. at ¶'s 26-33). Further, no appeal of such a remedy an be deemed fully exhausted until such time as it has been denied by the BOP Central Office. (Id. at ¶ 35).

On December 27, 2012 Defendants conducted an official review of the BOP records, revealing that prior to May 16, 2012, Plaintiff Hardwick filed an informal request alleging that Officer Packer was retaliating against him in regards to the April 9, 2012 incident. (Id. at ¶ 39). In that grievance, Plaintiff claimed that Defendant Packer was retaliating by threatening couner-suit, stating that he refused a shower, and thus denying him access to showers, bringing Plaintiff his mail later than other inmates, and threatening to "get him." (Id. at ¶ 40). On May 16, 2012, Plaintiff's informal request was denied. In response, Defendants state, Plaintiff filed an Administrative Remedy alleging the same complaints. (Id. at ¶ 42). On June 5 2012, Defendant Warden Thomas denied Plaintiff's Administrative Remedy. Plaintiff again appealed his Administrative Remedy to the BOP Northeast Regional Office, and was denied on July 13, 2012. (Id. at ¶ 44-46). Finally, Plaintiff

appealed the Administrative Remedy to the BOP Central Office on August 13, 2012, and was denied on September 12, 2012, for not complying with the submission requirements. (Id. at ¶'s 46-47). Defendants' SMF states that when an inmate is not satisfied with a Regional Directors's response, an inmate can appeal to the General Counsel. (Id. at ¶31-32). The Regional Director has 30 days to respond and the General Counsel is allotted 40 days to respond. (Id.). The BOP Central Office gave him 15 days to properly submit his appeal, but instead, on September 27, 2012, Plaintiff filed his instant civil rights Complaint with this federal Court. (Id. at ¶ 47-48).

As discussed below, Defendants concede in their Reply Brief, for purposes of their present dispositive Motion only, that Plaintiff exhausted his BOP administrative remedies with respect to his claims since Plaintiff submitted a document which conflicts with the BOP records on this issue. (Doc. 37, p. 2 & Doc. 36, p. 4 & Doc. 35, p. 13). Thus, paragraphs 26-48 of Defendants' SMF pertaining to the exhaustion issue are now essentially moot.

Although Plaintiff did not file the proper paragraph-by-paragraph response to Defendants' SMF as required by Local Rule 56.1, he did file an "Amended Statement of Facts," which we will now consider. (Doc. 36). In his Document 36, Plaintiff generally restates the allegations of his Complaint. He disputes the facts surrounding the April 9, 2012 incident, as stated in the Defendants' SMF. Instead, Plaintiff alleges, as he did in his Complaint, that he was taken to the shower area of G-Block, where he was beaten by several guards including Defendant Packer. (Doc. 36, p. 2). Plaintiff cites to his Exhibits A and B, the medical report filed after the incident, which shows that he sustained a laceration to his right eye, which required dermabond treatment. Plaintiff further alleges, that he did exhaust his administrative remedies because 40 days passed without a

14

response from the time he submitted his appeal to the BOP Central Office**.** (Id.) We agree with Defendants (Doc. 37, p. 3) that since Plaintiff's SMF is not a proper paragraph-by-paragraph response to Defendants' SMF, we will not consider it to fully dispute the Defendants' SMF, which we accept insofar as they are supported by undisputed evidence.

## V.    DISCUSSION.

### 1.  *Relief Requested*

As stated, Plaintiff requests, in part, that the corrections officers involved in the alleged April 9, 2012 assault incident to be arrested and criminally charged with conspiracy against rights under 18 U.S.C. §241.  Initially, we find that to the extent that Plaintiff is seeking this Court to Order the arrest of Defendant Packer and the unnamed corrections officers who he alleges assaulted him, and he seeks this Court to initiate criminal prosecution against the stated prison staff, this Court cannot grant as relief in the present *Bivens* civil rights case the initiation of any criminal prosecution.  The Third Circuit has held that a private person in a federal civil action could not impose criminal liability on a defendant because he lacked standing to do so.  *See Conception v. Resnik*, 2005 WL 1791699, *2, 143 Fed. Appx. 422, 425-26 (3d Cir. 2005) (Non-Precedential). This Court has no authority to grant Plaintiff relief for the arrest and prosecution of Defendant Packer and the unnamed corrections officers with respect to alleged criminal conduct in this federal civil action.  *See Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.) aff'd., in relevant part, C.A. No. 09-1486 (3d Cir. 5-21-10); *Banks v. U.S. Attorney*, 2008 WL 3853307, *2. Thus, insofar as Plaintiff is seeking this Court to have Defendant Packer and the unnamed corrections officers arrested and charged for their alleged illegal behavior, these requests are subject to dismissal with

prejudice. *See Ross v. Pennsylvania Bd. of Probation and Parole*, 2012 WL 3560819, *5 n. 3 (M.D. Pa August 16, 2012). Based on the foregoing, we find futility for the Court to allow Plaintiff to amend his Complaint with respect to the stated requests for relief.

Regarding Plaintiff's requests for both compensatory and punitive damages, to the extent that Plaintiff seeks monetary damages from Defendants Packer and Thomas, employees of the BOP, in their official capacities, we will recommend that these requests for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities. *See Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998); *Douglas v. BOP,* Civil NO. 08-0140 (M.D. Pa.); *Debrew v. Auman*, 354 Fed. Appx. 639, 641 (3d Cir. 2009)(Per Curiam). Thus, Plaintiff's claims for monetary damages to the extent they are against Defendants in their official capacities should be dismissed with prejudice. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). However, based on well-settled law, we find futility in granting Plaintiff leave to amend his damages claims against Defendants in their official capacities and, thus, these claims should be dismissed with prejudice.

**2.** *Exhaustion*

While exhaustion is normally a threshold issue and we generally would first discuss Defendants' contention that Plaintiff did not exhaust his administrative remedies regarding his instant constitutional claims, as stated above, Defendants concede in their Reply Brief only for

16

purposes of their dispositive Motion, based on Plaintiff 's evidence, that Plaintiff exhausted his BOP administrative remedies with respect to his claims. (Doc. 37, p. 2).

Plaintiff states, in his so-called "Amended Statement of Material Facts," that, "Hardwick then appealed to the BOP Central Office, which was rejected and he was advised to resubmit his appeal in the proper format within 15 days. Hardwick did exhaust his administrative remedies. Hardwick filed his administrative remedy to the BOP Central Office on August 2, 2012. It was received on August 13, 2012. The remedy was rejected on September 12, 2012. The BOP Central Office mail the rejection notice on September 24, 2012. The warden received the rejection notice on October 1, 2012. The 40 days had already pass (sic), so Hardwick filed his lawsuit." (Doc. 36, p. 4). Plaintiff contends, therefore, that the Central Office rejection was not sent until September 24, 2012, which is more than 40 day after he initially submitted the appeal. He supports this assertion with a copy of the rejection in his "Amended Exhibits in Support." (Doc. 35, p. 13). Defendants' SMF states plainly that, "The Regional Director has 30 days to respond and the General Counsel has 40 days to respond." (Doc. 29 at ¶ 32).

In their Reply Brief, Defendants acknowledge that they did not have a copy of the September 24, 2012 rejection letter. In fact, Defendants' counsel submits that she only became aware of the date of such letter upon viewing Hardwick's ECF filings. (Doc. 37, p. 2). As such, Defendants concede that Plaintiff has, in fact, exhausted his remedies, and that there previous argument against exhaustion is now moot. Thus, we do not further discuss the exhaustion issue

herein.[4]  We will proceed to a discussion of the remaining arguments raised by Defendants in support of their dispositive motion.

### 3.  *Warden Thomas*

Plaintiff raises a conspiracy claim against Defendant Warden Thomas.  Defendants argue, in their initial Brief in Support, that Defendant Warden Thomas should be dismissed, as he lacks the requisite personal involvement with respect to Plaintiff's constitutional claims.  As Defendants correctly point out in their Reply Brief, they raised this issue in their Brief in Support and Plaintiff did not address it in his Opposition Brief.  (Doc. 37, p. 4).  Moreover, it is clear based on Plaintiff's allegations in his Complaint detailed above, that Defendant Warden Thomas did not have any personal involvement with Plaintiff's Eighth Amendment excessive force claim and with Plaintiff 's First Amendment retaliation claim.  As such, we will recommend that these two constitutional claims against Defendant Warden Thomas be dismissed.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129

---

[4]Plaintiff must exhaust his BOP administrative remedies with respect to each one of his claims prior to filing a civil rights suit. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* Thus, the PLRA requires that inmates properly and fully exhaust administrative remedies before filing suit in federal court.  *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 463-64 (M.D. Pa. 2010).  The Defendants have the burden to plead and prove exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (non-precedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010), repeated the personal involvement necessary in civil rights action, and stated:

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983

[or1331] for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

Based on the above-detailed allegations in Plaintiff's Complaint as well as the undisputed evidence, Plaintiff's allegations against Defendant Warden Thomas simply lack the requisite factual specificity and allegations of personal involvement with regards to Plaintiff's Eighth Amendment excessive force claim and his First Amendment retaliation claim. Plaintiff does not allege any wrongdoing by this supervisory Defendant regarding his Eighth Amendment excessive force claim and his First Amendment retaliation claim other than based on *respondeat superior*.

Furthermore, to the extent that Plaintiff is attempting to name Defendant Warden Thomas as a party to his action based on Thomas's responses to Plaintiff's administrative remedy, we will recommend that Defendant Thomas be dismissed with prejudice from this action. It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *see also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005). *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).

This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as USP-Lewisburg and the BOP do, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, *supra* (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*. *See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.) (claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures.")(citations omitted).

Accordingly, we will recommend that Defendants' Motion to Dismiss be granted as to Defendant Warden Thomas regarding Plaintiff's Eighth Amendment excessive force claim and his First Amendment retaliation claim and that these two claims be dismissed with prejudice. At this late stage of the case, and based on the evidence, we find futility in allowing Plaintiff to amend his Complaint as against Defendant Thomas regarding his Eighth Amendment excessive force claim and his First Amendment retaliation claim. *See Grayson, supra*.

### 4. *Conspiracy Claim*

Plaintiff broadly raises a claim that Defendants, acting together, conspired to violate his

constitutional rights, namely, his Eighth Amendment right against excessive use of force and his right against retaliation for filing an administrative remedy. The Courts have held, "[t]he Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy'... will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992), *aff'd* 980 F.2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993). Further, as the Court stated in *Dennison v. Pa. Dept. of Corrections*, 268 F. Supp. 2d 387, 401 (M.D. Pa. 2003):

> To sustain a conspiracy claim under section 1983, [Plaintiff] must establish that: (1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law. *Adickes v S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Marchese v. Umstead,* 110 F.Supp.2d 361, 371 (E.D. Pa. 2000). Additionally, "'to [s]ufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Marchese*, 110 F.Supp.2d at 371 (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa.1999)) (other internal citations omitted). "'A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" *Id*. (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).

We find that Plaintiff does not specify any role or agreement of Defendants in the alleged conspiracy to violate his rights or to retaliate against him for his filed administrative remedies. He does not make specific factual allegations of an agreement, combination, or understanding among both Defendants to plot, plan, or conspire to carry out the alleged chain of events that have led to

the alleged violations of his First and Eighth Amendment rights. Further, Plaintiff fails to specifically state the personal involvement of each Defendant he claims was a part of the conspiracy, namely, Defendant Warden Thomas and Officer Packer. The Third Circuit has held that a Plaintiff who has filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). Further, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Id.* (citations omitted). Accordingly, because this case has already proceeded to the close of discovery, we find futility in allowing Plaintiff to amend his Complaint to allege a proper conspiracy claim. As such, we will recommend that his conspiracy claim be dismissed with prejudice as against both Defendants.

### 5. *Excessive Force Claim*

Defendants argue that CO Packer is entitled to summary judgment with respect to Plaintiff's Eighth Amendment excessive force claim because, based on the undisputed evidence, no reasonable juror could conclude that Defendant Packer used excessive force upon Plaintiff.

As the Court stated in *Freeman v. Bronkoski*, 2008 WL 4414725, *4 (M.D. Pa.):

> The Third Circuit Court of Appeals has noted that "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).
> In considering such a claim, the fact-finder must determine " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillan*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L. Ed. 2d 156 (1990)).
> When " 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," summary judgment is inappropriate for the defendant.

*Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L. Ed. 2d 251 (1986)). Five factors apply in determining whether a correctional officer used excesssive force: "(1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of the injury inflicted;'' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of the response.'" Id. (quoting Whitley, 475 U.S. at 321).

*See also Bright v. Gillis*, 89 Fed. Appx. 802, 805 (3d Cir. 2004) (Court stated the factors in establishing an Eighth Amendment excessive force claim against prison staff).

The Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *6 (E.D. Pa.), stated:

"The core inquiry in claims of excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." (Citing *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

We will apply the 5 *Hudson* factors, therefore in analyzing the Plaintiff's excessive force claim against Defendant CO Packer. The first factor, the need for the application of force, is contested in the instant case. Plaintiff contends throughout his filings that, "I never spat in Officer Packer's face, or attempted to pull away for him. I was assaulted and beaten for nothing." (Doc. 35, p. 2). Defendants, however, submit overwhelming evidence to the contrary. In his Declaration, Defendant Packer avers that the force he used on Plaintiff was needed to regain control of Plaintiff after Plaintiff spit in his face and that he only used the amount of force necessary to place Plaintiff on the floor and control him. (Doc. 29-1, Ex. A). The OIA Report Defendants submitted under Seal for in camera review reveals that since Plaintiff was threatening Defendant Packer and was "running his mouth" during the escort of Plaintiff to G-Block, Lieutenant Sherman was walking along side Plaintiff and Packer. (Doc. 25-3). The OIA Report indicates that when they

arrived at G-Block and entered the showed area, Plaintiff turned and spit in Packer's face. Lt. Sherman was an eye witness to Plaintiff 's conduct. Defendant Packer then immediately placed Plaintiff on the floor to regain control of him and Lt. Sherman assisted Packer. Additional staff then arrived and Packer left the area to be medically assessed. Plaintiff was placed in ambulatory restraints. Both Defendant Packer and Lt. Sherman stated that they did not use unnecessary force on Plaintiff and used only the force needed to control Plaintiff. Lt. Sherman did not observe Defendant CO Packer use any unnecessary force on Plaintiff.

Defendants also submitted the Discipline Hearing Officer ("DHO") Report in which Plaintiff was convicted of misconduct charges as a result of the incident, which stated, "Inmate Hardwick testified Section 11 of the incident report [detailing how he spit in Officer Packer's face and pulled away] is accurate. Inmate Hardwick testified further, 'I am guilty on all that.'" (Doc. 29-1, Ex. B, Att. 1).

As stated above, Plaintiff disputes Defendants' evidence, however, stating that he never spat in Defendant Packer's face and that he did not admit at his disciplinary hearing to Defendant Packer's version of the facts. Defendants' Exhibits indicate that Plaintiff was found guilty of the charges filed against him by Defendant Packer.[5] We note that there is no evidence that Plaintiff appealed his disciplinary conviction or had his conviction overturned *via* a §2241 habeas petition.

---

[5]Since Plaintiff was convicted of the charges in the Incident Report filed against him by Defendant Officer Packer regarding the incident which occurred on April 9, 2012, and Plaintiff was found to be the aggressor, his excessive force claim against Defendant Officer Packer may be *Heck* barred until Plaintiff has any disciplinary conviction overturned or invalidated *via* a habeas petition. *See Holmes v. Dreyer*,2010 WL 3791360, *3 (E.D. Pa. 9-28-10)(citing *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).

In the case of *Brooks v. Tyler*, in inmate sued four federal prison guards for excessive use of force. *Brooks v. Kyler*, 204 F.3d 102 (3d Cir. 2000). In that case, the Plaintiff alleged that he was severely beaten by several guards, yet the undisputed medical records showed that he sustained only a minor scratches to his neck and hands. Based upon this evidence, the District Court granted summary judgment for the Defendants. The Third Circuit, however, reversed that grant of summary judgment in Defendants' favor, stating, "accepting Brooks's allegations as true, as we must, a jury could find that the defendants acted not merely in good-faith to maintain or restore discipline, but rather out of malice for the very purpose of causing harm." *Id.* at 109.

As to the first *Hudson* factor, we find that based on Defendants' overwhelming evidence, a reasonable jury could not believe that Defendant Packer used excessive force on Plaintiff on April 9, 2012.

The second *Hudson* factor, the relationship between the need and the amount of force used, depends largely on the interpretation of the facts. Defendants' evidence shows that Defendant Packer was transporting Plaintiff to the shower area of G-Block, to hold him until a new cell for Plaintiff could be cleaned. (Doc. 29-1, Ex. A & Att. 1). At that time, Defendant Packer avers that Plaintiff assaulted him by spitting in his face, which necessitated the use of force requiring Packer to place on the floor to regain control of him until other officers could arrive. As a result, as shown by the medical report submitted by both parties, Plaintiff sustained a 2.5 cm laceration to his left eyebrow and suffered bleeding. The laceration was closed with Dermabond. (Id. at p. 22). As stated, the OIA Report indicates that Lt. Sherman walked along side Plaintiff and CO Packer to G-Block. (Doc. 25-3). When they arrived at G-Block and entered the showed area, Lt.

Sherman stated that Plaintiff turned and spit in Packer's face. Lt. Sherman stated that Defendant Packer and he immediately placed Plaintiff on the floor to regain control of him.

Given that Defendant Packer was assaulted by Plaintiff after Plaintiff had been verbally threatening him, and given that Lt. Sherman witnessed these events, we find that the evidence shows the use of force on Plaintiff was not excessive. Defendant Packer avers that he had to force Plaintiff to the ground to remain in control of him, and Plaintiff's minor injuries are indeed consistent with that explanation. (Doc. 29-1, Ex. A). Lt. Sherman, an eye witness, substantiated Defendant Packer's averments. In fact, in their Reply Brief, Defendants appear to be raising the same argument raised by the Defendants in *Brooks*, that, "a juror could not believe [Plaintiff] was beaten in and out of consciousness by several correctional officers and only sustained two small lacerations to his eyebrows." Defendants also state that the "use of force had to be 'de minimus,' rather than force that is repugnant to the conscience of mankind.'" (Doc. 37, p. 5).

In *Smith v. Mensinger*, however, the Third Circuit held that: "[w]e do not, of course, suggest that a fact finder could not consider the de minimus nature of injuries along with all of the other circumstances in concluding that the force that was employed could not have risen to the level required for an Eighth Amendment violation. A properly instructed fact finder could, after considering all of the evidence, conclude that Smith's injuries were so minor that the defendants' account of the incident is more credible than Smith's, and/or that the force used was not of constitutional dimension. That may have been exactly what the district court did here. However, that is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002).

Nonetheless, based on the overwhelming evidence in the present case, we find in faovr of Defendant Packer with respect to he second *Hudson* factor.

Third, we must consider the extent of the injury inflicted. As stated above, the Plaintiff and Defendants both submit the post-incident medical report as evidence. This report shows that Plaintiff received a 2.5 cm laceration to his left eyebrow, which was bleeding, and which had to be sealed using dermabond. (Doc. 29-1, p. 22). In his Complaint, Plaintiff states that several officers, among them Defendant Packer, stomped and kicked his face, and that he lost consciousness. The undisputed medical report, however, does not corroborate these allegations. Defendants argue that if Plaintiff was beaten severely by several guards, the medical report would reflect more than a small laceration to his eyebrow. As the Third Circuit has held, however, "de minimus injuries do not necessarily establish de minimus force." *Id.* however, once again, in lgiht of the overwhelming evidence supporting Defendant Packer's version of the incident on April 9, 2012, and in particular Lt. Sherman's corroboration and Plaintiff 's medical record, we find agree with Defendants' argument that CO Packer should be granted summary judgment as to the excessive force claim because of the minor nature of Plaintiff's injuries.

Fourth, with regard to the extent of the threat to the staff and inmates, we find that this factor is also weighs in favor of Defendant Packer. Defendants' evidence shows that Defendant Packer was transporting Plaintiff to G-Block with Lt. Sherman walking along side them since Plaintiff had been threatening Packer. (Doc. 29-1, Ex. A & Doc. 25-3). In the shower area, Plaintiff turned and spit in Packer's face and tired to pull away from him. As such, any resistance or attempt to flee by Plaintiff was a great threat not only to the Defendant Packer himself, but to other staff and other

inmates, who might have unexpectedly encountered an uncontrolled and unrestrained inmate. Under such circumstances, we find that the use of force to restrain Plaintiff was reasonable. Further, as stated Defendant Packer's actions were corroborated by Lt. Sherman and later approved by an After Action Review Report, which concluded that his use of force on Plaintiff was both reasonable and appropriate given the circumstances.  (Doc. 29-1, Ex. B Att. 4).

As stated, the OIA Report Defendants submitted under Seal for in camera review reveals that since Plaintiff was threatening Defendant Packer and was "running his mouth" during the escort of Plaintiff to G-Block, Lieutenant Sherman was walking along side Plaintiff and Packer.  (Doc. 25-3). The OIA Report indicates that when they arrived at G-Block and entered the showed area, Plaintiff turned and spit in Packer's face.  Lt. Sherman was an eye witness to Plaintiff 's conduct. Defendant Packer then immediately placed Plaintiff on the floor to regain control of him and Lt. Sherman assisted Packer.  Additional staff then arrived and Packer left the area to be  medically assessed. Plaintiff was placed in ambulatory restraints.   Both Defendant Packer and Lt. Sherman stated that they did not use unnecessary force on Plaintiff and used only the force needed to control Plaintiff. Lt. Sherman did not observe Defendant CO Packer use any unnecessary force on Plaintiff. Thus, Lt. Sherman witnessed the entire incident with Plaintiff on the day in question and he completely corroborated Defendant Packer's version of the incident. Lt. Sherman's version of the incident also controverted Plaintiff 's version of the incident.   Further, Plaintiff failed to offer any evidence to substantiate his Affidavit in which he averred that Defendant Packer used excessive force on him on April 9, 2012.

As mentioned, Plaintiff, in his Amended Exhibits, submits his own sworn Affidavit, in which

he avers that he posed no threat to Defendant Packer. (Doc. 35). In *Brooks*, the Third Circuit Court instructed, "an inmate who is proceeding *pro se* is in a decidedly difficult position from which to generate 'record evidence' on his behalf...[u]nder these circumstances, his affidavits...are about the best that can be expected from him [at the summary judgment phase of] the proceedings." *Brooks*, 204 F.3d at 108 n.7(quoting *Norman v. Taylor*, 25 F.3d 1259, 1265 (4th Cir. 1994)). Accordingly, we will consider Plaintiff's Affidavit as evidence which disputes Defendants' evidence as to the events on April 9, 2012. However, as discussed, we find that the overwhelming evidence supports Defendant Packer's version of the events and shows that Packer only used the amount of force necessary to regain control over Plaintiff after Plaintiff had spat in his face.

Finally, we consider the fifth *Hudson* factor, whether any efforts were made to temper the use of force response. According to Defendants' evidence, after Plaintiff and Defendant Packer arrived in G-Block and Packer escorted Plaintiff into the shower holding area, Plaintiff then turned and spit in Packer's face and attempted to pull away from Packer. Lt. Sherman then called for assistance and helped Defendant Packer place Plaintiff on the floor to regain control of him. (Doc. 25-3 & Doc. 29-1, Ex. A). Other officers then arrived and Lt. Sherman relieved Defendant Packer of his duties since he had just been assaulted by Plaintiff spitting on him. Defendants' undisputed evidence then shows that other officers transported Plaintiff to the medical unit for care almost immediately after the incident occurred. (Doc. 29-1, pp. 20-21). Plaintiff had only a minor laceration to his left eyebrow and he was treated for it. There is no evidence to support Plaintiff's claim that he was knocked unconscious. Also, in the DHO's disciplinary report regarding the charges filed against Plaintiff by Defendant Packer, the DHO found Plaintiff guilty and stated that

Plaintiff admitted to the incident as reported by Defendant Packer. (Doc. 29-1, p. 10, Ex. B, Att. 1). As discussed, Plaintiff disputes Defendants' evidence as to the spitting incident and the use of force. Further, in his Affidavit, Plaintiff avers that he did not admit to the DHO to the incident as reported by Defendant Packer.

In analyzing these five *Hudson* factors in relation to the facts surrounding the alleged incident when Defendant Packer used force on Plaintiff, we find that the overwhelming evidence fails to support a claim of excessive use of force. Defendants argue that the de minimus nature of Plaintiff's injury do not support his excessive force claim. When we consider the minor injury to Plaintiff along with the other evidence Defendants submitted, as detailed above, we find that no reasonable fact finder could conclude that the forces used by Defendant Packer on Plaintiff was excessive.

As such, we find that the evidence does not create a disputed issue of material fact with respect to Plaintiff's excessive force claim against Defendant Packer. Therefore, we shall recommend that Defendant Packer be granted summary judgment as to this claim.

### 6. *Retaliation Claim*

In his Complaint, Plaintiff generally alleges a claim of retaliation against Defendant Packer in violation of his First Amendment rights. He avers that Defendant Packer threatened him and tampered with his food as a result of the administrative remedy he filed against Packer after the April 9, 2012 incident. (Doc. 1, p. 2). Defendants argue that Plaintiff actually did file his grievance and pursue his administrative remedies, and thus, he was not deterred from exercising his rights. Defendants contend that since the evidence shows no adverse action was taken against Plaintiff and

31

Plaintiff was able to pursue his BOP administrative remedies, Plaintiff failed to establish an actionable retaliation claim. (Doc. 23, p. 24). Defendants also point out in their Reply Brief that Plaintiff did not oppose their Summary Judgment Motion with respect to his retaliation claim in the documents he filed in response to that Motion, Docs. 34-36. (Doc. 37, p. 6).

In *Mincy v. Chmielewski*, 2007 WL 707344, *5-*6 (M.D. Pa.), the Court stated:

> Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir.2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001) (quoting *Allah,* 229 F.3d at 225).

> "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser,* 241 F.3d at 333; *see also, Jerry v. Williamson,* 2006 WL 3741840, 1 (3d Cir.2006). While inmates "do not forfeit all constitutional protections by reason of their conviction and confinement including those under the First Amendment ..., lawful incarceration brings about withdrawal or limitation of privileges and rights for various reasons, including institutional security." *Cooper v. Tard,* 855 F.2d 125, 128 (3d Cir.1988); *see also, Pell v. Procunier,* 417 U.S. 817, 822 (1974) (stating that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").

Plaintiff had a First Amendment right to file a grievance and pursue his administrative remedies allowed by the BOP. *See Mincy v. Chmielewski*, 2007 WL 707344, *6 ("The filing of a grievance clearly falls within the ambit of the First Amendment.")(citation omitted). As such, the first element of Plaintiff's retaliation claim is satisfied. As to the second element, we recognize that an action is considered "adverse" when it would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). In his Complaint, Plaintiff alleges only that, "[w]hen I began to exhaust my remedies, Correctional Officer

32

Packer started threatening me every day and doing things to my food." (Doc. 1, p. 4). In his "Amended Exhibits," however, Plaintiff submits several of the administrative remedies he filed, which detail how Defendant Packer denied him use of the shower facilities, and would distribute Plaintiff his mail later than the other inmates on his cell block. (Doc. 35, p. 7). In a later administrative remedy Plaintiff submitted as evidence, he wrote, "Officer Packer has access to my food, and my cell door, and he works my range five days of the week. Therefore, my life is in constant danger, because he has made it clear that he intends to retaliate on me..." (*Id.* at p. 9). Plaintiff does not allege, nor does he submit evidence that Defendant Packer ever took actions against him, which reach the level of "adverse," i.e., would "deter a person of ordinary firmness" from pursuing his administrative remedies. Indeed, the record shows that Plaintiff did continue to pursue his administrative remedies regrading his claims against Packer. (Doc. 36, p. 4 & Doc. 35, p. 13). Also, Plaintiff does not allege that Defendant Packer ever actually did tamper with his food. In fact, the only actual actions taken by Defendant Packer which Plaintiff alleges are the occasional denial of shower access and the late delivery of his mail, both of which are *de minimus* actions, not raising to the level of "adverse" for purposes of a retaliation claim. As the Court has held, "certain threats are so *de minimis* that they do not rise to the level of being constitutional violations." *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).

Additionally, we find that, as to third element of a retaliation claim, Plaintiff has failed to establish a sufficient causal link between the alleged retaliation and the exercise of his First Amendment right, *i.e.,* filing administrative remedies. The Third Circuit has held that, regarding establishing a causal link, "[i]n the absence of that proof the plaintiff must show that from the

'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Lauren W. Ex rel. Jean W. V. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (quoting *Farrell v. Planters Livesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). In the instant case, however, Plaintiff has neither submitted evidence to establish such a causal link, nor has he established a record from which causation could be inferred. Because the alleged retaliation is so de minimus, it is unreasonable to assume that those acts, even if assumed true, were caused by the Plaintiff's administrative remedies, or that they were taken in retaliation to harm the Plaintiff in some way.

Furthermore, as Defendants correctly point out, Plaintiff has not alleged that he has actually been deterred from exercising his rights. In fact, Plaintiff's evidence shows, and Defendants concede for present purposes only, that Plaintiff has fully exhausted his BOP administrative remedies regarding his instant claims. The Supreme Court has explained that "[t]he reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 589 n. 10 (1998). Plaintiff has not established that he has been prevented from nor inhibited in exercising his First Amendment right. Therefore, we find that Plaintiff's retaliation claim is without merit. Thus, because Plaintiff has failed to establish evidence sufficient to support his claim of retaliation, we find that the Defendants' motion for summary judgment should be granted as to this claim.

## VI.    RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Defendants' Motion to Dismiss, or for Summary Judgment (**Doc. 15**) be granted to the extent that it is a Summary Judgment Motion with respect to all of Plaintiff's constitutional claims against Defendant Warden Thomas.   It is recommended that Judgment be entered in favor of Defendant Warden Thomas and against Plaintiff.  It is further recommended that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims of conspiracy, of excessive force and of retaliation as against Defendant CO Packer.  It is also recommended that Judgment be entered in favor of Defendant CO Packer and against Plaintiff.   Additionally, it is recommend that the Court deny Plaintiff 's **Doc. 39** Motion for an Extension of Time to file a sur-reply brief.

Finally, it is recommended that the Court close this case.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated**: July 16, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEONARDO HARDWICK,               :        CIVIL ACTION NO. 1:CV-12-1936
                                 :
              Plaintiff          :        (Chief Judge Kane)
                                 :
              v.                 :        (Magistrate Judge Blewitt)
                                 :
R. PACKER, *et al.*,             :
                                 :
              Defendants         :

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated   **July 16, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute
a waiver of any appellate rights.

s/ Thomas M. Blewitt

_____
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 16, 2013**